■ In the Matter of JOHN A. WARD et al., Appellants, v ROGER BENNETT, as Chairman of the Board of Standards and Appeals of the City of New York, et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the Board of Standards and Appeals of the City of New York, dated November 22, 1988, which denied the petitioners' application under General City Law § 35 to permit the erection of a one-family dwelling on their property, the petitioners appeal from a judgment of the Supreme Court, Richmond County (Sangiorgio, J.), dated March 8, 1989, which denied the application and dismissed the proceeding without prejudice to any rights which the petitioners may have under New York City Charter § 197-c.

Ordered that the judgment is affirmed, with costs.

Contrary to the petitioners' contention, the respondents' denial of their application to build a one-family dwelling in the bed of a mapped street pursuant to General City Law § 35 was neither arbitrary nor an abuse of discretion. General City Law § 35 provides that any decision of a board of appeals with respect to such a building permit shall be subject to review "in the same manner and pursuant to the same provisions as in appeals from the decision of such board upon zoning regulations". It is well settled that the courts may set aside the determination of a zoning board only where the record reveals illegality, arbitrariness or an abuse of discretion. The determination of the responsible officials in the affected community will be sustained if it has a rational basis *(see, Matter of Cowan v Kern,* 41 NY2d 591; *Matter of Faham v Bockman,* 151 AD2d 665, 666). Here, the evidence of objections to the building permit from the New York City Department of Transportation and the New York City Department of Environmental Protection provided ample support for the respondents' denial of the building permit. There is no indication that the denial of the permit was irrational.

In addition to the application for a building permit pursu-

ant to General City Law § 35, the petitioners also had available to them the opportunity to apply for a demapping of the roadbed pursuant to New York City Charter §§ 197-c through 199, also known as the Uniform Land Use Review Procedure (hereinafter ULURP). Among the requirements of ULURP are community board involvement and notice to the public to be followed by a public hearing. Accordingly, it cannot be said from this record that the petitioners exhausted their administrative remedies (see, Borducci v City of Yonkers, 144 AD2d 321, 324). Nor is there sufficient evidence in the record to conclude that resort to the administrative remedy available under ULURP would necessarily prove futile (see, Petosa v City of New York, 135 AD2d 800, 803).

Under the circumstances, the judgment appealed from is affirmed. Kunzeman, Kooper and Harwood, JJ., concur.

Bracken, J. P., concurs in part and dissents in part, and votes to modify, by severing those branches of the petition which allege an unconstitutional taking without just compensation, reinstating those branches of the petition, and converting them into an action for a judgment declaring that the map of the portion of North Burgher Avenue which runs through the petitioners' property constitutes an unconstitutional taking, and as so modified, to affirm the judgment, with the following memorandum, in which Balletta, J., concurs. The petitioners have submitted proof sufficient to warrant the conclusion that no agency of the City of New York has any intent to acquire or to open the portion of the mapped street upon which their property is located. The administrative determination under review, which effectively deprives the petitioners of all use of their property, is nevertheless based essentially on the existence of this mapped but unopened roadway. Although there may be some "rational basis" to support this determination, it does not automatically follow that the respondent City of New York is relieved of its constitutional obligation to provide just compensation for what the petitioners allege, and may prove to be, a de facto taking of their property (US Const, 5th, 14th Amends; NY Const, art I, § 7; Jensen v City of New York, 42 NY2d 1079).

I believe that the petitioners have demonstrated a prima facie entitlement to appropriate relief based on their claim that their property was taken without just compensation, and that the City should have to defend such a claim on the merits. Contrary to the Supreme Court, I do not believe that the petition, to the extent that it seeks such relief, is subject to dismissal on the ground that available administrative reme-

dies have not been exhausted. There is evidence in the record that tends to show that the procedure for "demapping" a street could take as long as four years and would cost at least $25,000. One City agency with jurisdiction has already determined that the public interest warrants denying the petitioners the right to develop their property. The court should not require that the petitioners waste several more years and tens of thousands of dollars in what may be a futile effort to have a different City agency reach a different determination.

The doctrine which requires a litigant to exhaust administrative remedies is based on a rule of common sense. According to this doctrine, it is unnecessary for the judicial branch of government to review the constitutionality of a local government's regulation of private property until it is clear that the aggrieved landowner may not obtain satisfactory relief from an agency of the local government itself *(see generally, Town of Islip v Zalak,* 165 AD2d 83; *Matter of Jamaica Water Supply Co. v Public Serv. Commn.,* 152 AD2d 17, 19-20; *Town of Islip v Cuomo,* 147 AD2d 56, 65-67). The doctrine obviously has no applicability where there is no administrative relief available *(Brown v Village of Owego,* 260 App Div 328, *affd* 284 NY 655 [failure to appoint Zoning Board of Appeals]). In my opinion, the doctrine should be equally inapplicable where one municipal agency has already denied the administrative relief sought, where there is no guarantee that a second administrative agency would disagree with the first, and where the attainment of administrative relief from the second agency is rendered impractical because of the inordinate delay and expense associated with it *(see generally,* 2 Anderson, New York Zoning and Practice § 28.12, at 447 [3d ed]; 7 Rohan, Zoning and Land Use Controls § 52.02 [3]; *see also, GET Automatic Elec. v Allphin,* 38 Ill App 3d 910, 349 NE2d 654, *affd* 68 Ill 2d 326, 369 NE2d 841 [exhaustion of multiple administrative remedies not required]). The vindication of the constitutional rights of property owners should not be impeded by a local government's creation of a "bureaucratic nightmare" *(de St. Aubin v Flacke,* 68 NY2d 66, 75-76).

In the case of *Petosa v City of New York* (135 AD2d 800, 802), we held that a landowner could not bring a constitutional challenge until he had sought *"either* a building permit under General City Law § 35 *or* * * * [a] 'demapping' * * * pursuant to New York City Charter 197-c" (emphasis added). The language employed by the court in the *Petosa* case was, in my view, not chosen improvidently: rather, the court in all likelihood understood that to require a landowner to pursue

*both* of two alternative administrative remedies in order to vindicate his property rights would be overly burdensome, and that it was sufficient to pursue *either* of the available remedies.

I therefore vote to modify the judgment under review so as to reinstate so much of the petition as alleges that the petitioners' property has been taken without just compensation, and to convert that portion of the petition into an action for a declaratory judgment, to be determined by the Supreme Court.